UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL W. ESPY,

      Plaintiff,    Civil Action No. 19-10305
              Honorable Robert H. Cleland
v.            Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [13, 16]**

   Plaintiff Michael Espy ("Espy") brings this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #13, #16), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.  RECOMMENDATION**

   For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Espy is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment (**Doc. #16**) be **DENIED**, Espy's Motion for Summary Judgment (**Doc. #13**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to

sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Report and Recommendation.

## II.    REPORT

### A.    Background

Espy was 56 years old at the time of his alleged onset date of October 1, 2015, and at 5'6" tall weighed approximately 190 pounds during the relevant time period.  (Tr. 36, 186, 191).  He completed college and subsequently earned a master's degree.  (Tr. 38, 191).  He worked as a math teacher for 28 years – the last 15 in the Flint Public Schools – before stopping work abruptly on October 1, 2015, because of anxiety and stress created when his superintendent insisted on imposing major curriculum changes that he believed would be detrimental to his students.  (Tr. 38, 40-43, 53, 190-91, 200).  He now alleges disability primarily as a result of anxiety, depression, a ruptured Achilles tendon, and irritable bowel syndrome ("IBS").  (Tr. 44-45, 56-57, 190).

After Espy's application for DIB was denied at the initial level (Tr. 92-95), he timely requested an administrative hearing, which was held on January 10, 2018, before ALJ Kevin Fallis (Tr. 30-70).  Espy, who was represented by attorney Matthew Taylor, testified at the hearing, as did vocational expert Stephanee Leech.  (*Id.*).  On April 3, 2018, the ALJ issued a written decision finding that Espy is not disabled under the Act.  (Tr. 10-25).  On December 4, 2018, the Appeals Council denied review.  (Tr. 1-5).  Espy timely filed for judicial review of the final decision on January 31, 2019.  (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Espy's medical record, function and disability reports, and testimony as to his conditions and

resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.      The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Espy is not disabled under the Act. At Step One, the ALJ found that Espy has not engaged in substantial gainful activity since October 1, 2015 (the alleged onset date). (Tr. 12). At Step Two, the ALJ found that he has the severe impairments of status/post right Achilles tendon tear and repair, gastroesophageal reflux disease, obesity, dysthymic disorder, attention deficit hyperactivity disorder, generalized anxiety disorder, and major depressive disorder. (*Id.*). At Step Three, the ALJ found that Espy's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 13).

The ALJ then assessed Espy's residual functional capacity ("RFC"), concluding that he is capable of performing medium work with the following limitations: can occasionally climb stairs and ramps, but can never climb ladders, ropes, or scaffolds; can occasionally use foot controls with the right lower extremity; must avoid all exposure to unprotected heights; must avoid concentrated use of hazardous moving machinery; limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work-related decisions and

4

routine workplace changes; and limited to work with only occasional interaction with the public.  (Tr. 16-17).

At Step Four, the ALJ found that Espy cannot perform his past relevant work as a math instructor.  (Tr. 23).  At Step Five, the ALJ determined, based in part on testimony provided by the vocational expert in response to hypothetical questions, that Espy is capable of performing the jobs of materials handler (150,000 jobs nationally), packer (80,000 jobs), and inspector (20,000 jobs).  (Tr. 24-25).  Thus, the ALJ concluded that Espy is not disabled under the Act.  (Tr. 25).

### C.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).   In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an

examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

### D. Analysis

In his decision, the ALJ rejected the December 2015 and November 2017 opinions of Espy's two treating mental health[1] providers (psychologist Gerard Williams, Ph.D. and therapist Donna Marion, Ph.D., LMSW), giving both of these opinions "little weight" because they purportedly were "inconsistent with the general pattern of evidence contained in the hearing level record." (Tr. 22). At the same time, the ALJ gave "significant weight" to the April 2016 opinion of the state agency psychological

---

[1] Because the Court finds error in the ALJ's evaluation of Espy's mental impairments, it will focus its discussion on evidence concerning those impairments.

consultant, Leonard Balunas, Ph.D., finding that it was "consistent with the general pattern of evidence contained in the hearing level record."  (Tr. 21).  Espy now asserts that the ALJ erred in failing to give good reasons, supported by substantial evidence, for rejecting the opinions of his treating psychologist and therapist. (Doc. #13 at 15-24).  The Court agrees.

### 1.     The Relevant Medical Evidence

As set forth above, Espy was a math teacher for nearly thirty years – the last fifteen in the Flint Public Schools – until he simply "walked away" from his job on October 1, 2015.  (Tr. 38).  According to Espy, he did so because he was unable to cope with the anxiety and stress of dealing with a new superintendent, who – despite his protests – was insisting on a "very advanced" curriculum that Espy felt "was way over matching [his] students."  (Tr. 38, 40).

The next day, October 2, 2015, Espy presented to his primary care doctor, Edward Holden, M.D., complaining about this ongoing job-related stress and anxiety.  (Tr. 271).  He reported being irritable and short-tempered, saying that he was isolating himself, his stomach was "churning," and he was experiencing 3-4 bowel movements each morning.  (*Id.*).   An EKG performed that day showed sinus bradycardia.  (*Id.*).  Dr. Holden diagnosed Espy with anxiety, took him off work for two weeks, and advised him to start counseling immediately.  (*Id.*).  On October 16, 2015, Espy returned to see Dr. Holden, continuing to complain of anxiety, chest discomfort, diarrhea, irritability, insomnia, and self-isolating behavior.  (Tr. 269).  Dr. Holden kept him off work pending a psychiatry appointment.  (*Id.*).  On October 28, 2015, Espy reported having started Zoloft, but he

continued to feel anxious when thinking about work and suffered from insomnia.  (Tr.

268).  His leave of absence was extended to November 11, 2015.  (*Id.*).

On November 3, 2015, Espy was evaluated by Shurkela Mason, LPC at Delta

Family Clinic South.  (Tr. 307-10).  Ms. Mason noted that Espy was having trouble

sleeping, was very depressed and sad, had little desire to interact with his family, and

became "physically ill, depressed, sad, and anxious" when thinking about returning to his

teaching position. (Tr. 307).  She diagnosed Espy with major depressive disorder (severe)

and generalized anxiety disorder, assigned him a Global Assessment of Functioning

("GAF")[2] score of 50, and referred him for a psychiatric examination and individual

therapy.  (Tr. 309-10).

On December 10, 2015, Espy went to Delta Family Clinic South, where Dr.

Williams noted that he was still struggling with depression and anxiety, was hyperverbal,

had a GAF score of 52, and required further psychiatric testing.  (Tr. 311-14).  At a

December 15, 2015 psychiatric evaluation, Dr. Williams noted that, on examination, Espy

was poorly groomed, with a guarded attitude, blunted affect, and anxious and dysphoric

mood.  (Tr. 328).  Dr. Williams further noted that Espy was pacing and had distracted

attention/concentration, poor recent memory, and tangential thought process.  (*Id.*).  After

considering the results of psychological testing performed that day, Dr. Williams

diagnosed Espy with attention deficit hyperactivity disorder and anxiety disorder and

opined:

---

[2] GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations.  *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

The results from the formal test instruments does also clearly implicate the likely presence of difficulties with sustained attention, concentration, and distractibility. He did appear to be able to function in the low stimulus test environment but even relatively minor increases in the ambient stimulus levels of the room yielded significant declines in his ability to maintain his focus.

\*\*\*

[H]e does also appear to be experiencing an anxiety disorder. He does report significant stress and anxiety regarding job-related issues. He was also noted to be somewhat anxious during the process of this evaluation. The results from the formal personality test instruments does also implicate the likely presence of significant levels of anxiety and stress. It is quite likely that he developed his anxiety disorder secondary to his difficulties with sustained attention and concentration.

\*\*\*

Due to the severity of this individual[']s current cognitive and emotional issues, it is not likely that he will be able to establish or maintain gainful employment.

(Tr. 305-06).

Espy continued to see Ms. Mason for therapy throughout 2016. On February 3, 2016, she noted that Espy was "still not doing well." (Tr. 291). He continued to experience anxiety and depression, thinking about his former students and their families constantly, and worrying about their well-being. (*Id.*). He was "very jittery and anxious," could not keep still, and had difficulty maintaining focus. (*Id.*). On March 16, 2016, Ms. Mason noted that Espy remained very depressed and felt "helpless and sad for his students and their families." (Tr. 293). He had developed a facial tic and IBS as a result of ongoing depression and anxiety. (*Id.*). Similarly, on May 18, 2016, Espy was described as "very anxious, sad, and jittery." (Tr. 295). On June 14, 2016, Ms. Mason

noted that he "was not in a good place mentally," but, rather, was sad and depressed.  (Tr. 317).

At his next visit to Ms. Mason, on July 27, 2016, Espy was again anxious and sad, with low affect, and was "obsessing" over "how things are going to end for him[.]"  (Tr. 393).  He continued to express concern for his co-workers and students, saying it was very hard for him to focus, while dealing with his emotional and physical problems.  (*Id.*).  By September 2016, Espy still "was not doing very well," and Ms. Mason noted:

> [Espy] reported that, he is still very sad about not teaching.  [He] keeps going over in his mind the scenarios of him having to go on sick leave.  [Espy] reported that, he has been very anxious and depressed, thinking about his job and his students.  [He] reported that, he has been very sad, depressed, anxious, and felt hopeless about himself.

(Tr. 395).

In November 2016, Espy transitioned to a new therapist at Delta Family Clinic South, Donna Marion, Ph.D., LMSW.  Dr. Marion noted that Espy's "entire conversation was on the negatives in his life," and he was "anxious and upset and seemed to project no positive thoughts for his future."  (Tr. 399).  At his next visit, Espy spent a lot of time "venting" about "being pushed out of his job due to circumstances beyond his control." (Tr. 402).  In February 2017, Espy appeared "a little sad" and continued to "struggle with flashbacks concerning his previous job and the unfairness of the circumstances he currently finds himself [in]."  (Tr. 405).  In March 2017, Dr. Marion noted that Espy was "still obsessing a lot about the injustice in his life and the unfairness of the system and the lack of opportunities to make meaningful changes in his life."  (Tr. 408).  In May 2017,

10

Dr. Marion noted that Espy continued to feel anxious, confused, lost, and angry that his "life and career ended abruptly" and that he had been "the victim of a malicious system." (Tr. 431). Two months later, Dr. Marion observed that Espy continued to exhibit pressured speech and thoughts; he was still experiencing flashbacks and nightmares; and that his "symptoms and PTSD are still very strong daily and intrusive for him." (Tr. 434).

Espy returned to Dr. Williams for another psychiatric evaluation on August 10, 2017, with mental status examination revealing anxious mood, pressured speech, and obsessive thought content. (Tr. 439). Dr. Williams' diagnoses included PTSD and dysthymia, and he prescribed Lexapro, Restoril, and Ativan. (Tr. 440). When Espy returned to see Dr. Marion on November 17, 2017, she noted:

> Subjectively [Espy] seemed to have pressured speech, lots of neg[a]tive comments and complaints[.] He had some paperwork for social security and it took a long while to answer each question as he perseverated over each. Most of his [p]erseverations related to his past job[.] He seemed to have difficulty thinking of situations where he might move to a new job. He explained he is having problems with social situations where he is embarrassed by his lack of a job as well as having social phobia. He seemed to perseverate continuously on his teaching problems. Overall he seems to have made little progress in his condition since the last visit.

(Tr. 451). That same day, Dr. Marion completed a "Medical Assessment of Ability to Do Work-Related Activities (Mental)," in which she opined that Espy is markedly limited in the ability to understand, remember, and carry out detailed instructions; work in coordination with or proximity to others without being distracted by them; complete a normal workday and work week without interruption from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of

11

rest periods; and respond appropriately to changes in the work setting.  (Tr. 454-56).

      2.     *The Treating Physician Rule*

As the Sixth Circuit has emphasized, greater deference is generally given to the opinions of treating medical sources than to the opinions of non-treating medical sources. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *see also Rogers*, 486 F.3d at 242.  The opinion of a treating physician is the subject of a special rule: it must be given controlling weight if it is well-supported and not inconsistent with the record; and, even if it is not given controlling weight, it is subject to a "rebuttable presumption of deference."  *Vock v. Comm'r of Soc. Sec.*, No. 13-12753, 2014 WL 4206885, at \*14 (E.D. Mich. Aug. 22, 2014) (citing 20 C.F.R. §§ 404.1527(c) and 416.927(c)).  "Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)).  As a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-46 (6th Cir. 2004) (finding the ALJ's failure to make sufficiently clear why he rejected the treating physician's opinion was not harmless error, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion).  Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes."  *Bailey v. Comm'r of Soc. Sec.*, No. 98-3061, 1999 WL 96920, at \*4 (6th Cir. Feb. 2, 1999).

12

Moreover, even when a treating source's opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and diagnostic techniques, or is inconsistent with other substantial evidence in the record, it should not necessarily be completely rejected; rather, it must be weighed considering a number of factors, including "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source ...." *Wilson*, 378 F.3d at 544.

### 3. The ALJ's Application of the Treating Physician Rule

In his motion for summary judgment, Espy argues that the ALJ erred in applying the treating physician rule to the opinions of his two treating providers, Dr. Williams and Dr. Marion.[3] (Doc. #13 at 15-24). Specifically, the ALJ considered Dr. Williams' December 2015 opinion that Espy has difficulties with sustained attention, concentration, and distractibility; significant stress and anxiety regarding job-related issues; and that he cannot be around people. (Tr. 22, 299, 305-06). The ALJ gave this opinion little weight because it was "inconsistent with the general pattern of evidence contained in the hearing level record." (Tr. 22). Similarly, the ALJ considered Dr. Marion's November 2017

---

[3] The Commissioner asserts that because Dr. Marion's Ph.D. is in "Marriage and Family Systems," and because she purportedly "works as a 'Masters Level' psychologist," she is not an acceptable medical source within the meaning of the applicable regulation. (Doc. #16 at 7, n. 1 (citing 20 C.F.R. § 404.1502)). To begin with, however, the ALJ made no such finding, instead evaluating Dr. Marion's opinion as that of a treating provider. (Tr. 22). Moreover, even if the Court were to view Dr. Marion as an "other source" – rather than an "acceptable medical source" – within the meaning of this regulation, the ALJ was still required to "explain the weight given to [her opinion] or otherwise ensure that the discussion of the evidence ... allows a claimant or subsequent reviewer to follow the adjudicator's reasoning ...." *Soc. Sec. Rul. 06-03p*, 2006 WL 2329939, at *6 (Aug. 9, 2006). For the reasons set forth herein, this was not done.

opinion that Espy is markedly limited in several areas, including, in relevant part, the ability to work in coordination with or proximity to others without being distracted by them; complete a normal workday and work week without interruption from psychologically-based symptoms; and respond appropriately to changes in the work setting.  (Tr. 22, 454-56).  However, the ALJ gave this opinion little weight too, finding it "inconsistent with the general pattern of evidence contained in the hearing level record."[4] (Tr. 22).  For the reasons set forth below, the Court finds the ALJ's analysis of these opinions failed to comply with his obligations under the treating physician rule.

Very recently, this Court considered a similar case, in which the ALJ rejected the opinion of the claimant's treating physician because it was "inconsistent with the objective medical record and the claimant's activities of daily living[.]"  *Mendyk v. Comm'r of Soc. Sec.*, No. 18-11730, 2019 WL 4053949, at *6 (E.D. Mich. Aug. 7, 2019). In doing so, the Court found that "the ALJ's single, perfunctory statement is exactly the type of vague language that the Sixth Circuit has found insufficient to permit meaning[ful] review."  *Id.* (citing cases).  The Court reiterated that "an ALJ 'must articulate, a[t] some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning.'"  *Id.* (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)).

---

[4] The ALJ also found Dr. Marion's opinion "inconsistent with the GAF score assessments … in the record."  (Tr. 22).  Discounting Dr. Marion's opinion on this basis makes little sense, however, because, elsewhere in his decision, the ALJ specifically commented that "GAF scores are of limited use in assessing the severity of a mental impairment" and, thus, he "did not rely heavily on the GAF evidence as the primary support for findings of impairment severity or of mental limitations."  (Tr. 22, 23).  Moreover, although the ALJ cited GAF scores of 58 and 65 at times (Tr. 23, 440, 449), he also referenced GAF scores of 50 and 52 on other occasions (Tr. 23, 309, 336). These lower scores suggest that, at least on those occasions, Espy was found to have serious mental symptoms or serious impairment in social, occupational, or school functioning, that are "consistent with a finding of disability." *See Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 527 (6th Cir. 2004).

14

Here, as in *Mendyk*, this simply was not done.  Indeed, in rejecting the opinions of Espy's treating providers as "inconsistent with the general pattern of evidence" (Tr. 22), the ALJ did not cite to any specific treatment notes, medical records, testimony, or other evidence, nor did he explain how or why such evidence purportedly was inconsistent with the opinions of Dr. Williams and Dr. Marion.  In a passage from *Mendyk* that is equally applicable on the facts of this case, the Court explained:

> In fact, it appears that the ALJ considered *none* of the factors that an ALJ "must" evaluate when reviewing the opinion of a treating physician, such as the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion … and any specialization of the treating physician[,]" perhaps with the ostensible, broad-brush exception of the "consistency of the opinion with the record as a whole" factor.  Although the Commissioner may be correct in stating that pinpoint citation to the record is not necessary, compliance with the regulation governing the consideration of the treating physician's opinion is, and neither the claimant nor the Court can be expected to search through the record and guess about what appeared to be "inconsistent" in the ALJ's mind's eye.

*Id.* (internal quotations omitted) (emphasis in original).  As in *Mendyk*, then, the ALJ here offered no substantive discussion or analysis of the opinions of Dr. Williams or Dr. Marion, and "the Court is unable to provide a 'meaningful review' of the ALJ's decision to discount [those] opinion[s]."  *Id.* (quoting *Gayheart*, 710 F.3d at 376); *see also Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010) ("Put simply, it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.").[5]

---

[5] While the Commissioner attempts to rehabilitate the ALJ's lack of reasoning by citing to some record evidence that *could* support the ALJ's finding (Doc. #16 at 8-14), "that is precisely the

The Commissioner does not dispute that the ALJ's discussion of the physicians' opinions lacked meaningful analysis, but argues, "although the ALJ did not cite to the evidence [supporting the ALJ's analysis] in the paragraph where he discussed his weighing of the opinion, he did cite to supporting record evidence before and after that paragraph (Tr. 14-23)." (Doc. #16 at 17) Had the ALJ more thoroughly and evenly discussed the record evidence, such that it was apparent he had weighed the significant competing evidence,[6] the Commissioner's argument would be more compelling. However, the ALJ's rejection of these two opinions as "inconsistent with the general pattern of evidence" (Tr. 22) is, at least in large part, not borne out by portions of the record never discussed by the ALJ.

As set forth above, Dr. Williams opined that Espy has "difficulties with sustained attention, concentration, and distractibility" and "can't be around people[.]" (Tr. 299, 305). Similarly, Dr. Marion opined, in relevant part, that Espy is markedly limited in the ability to work in coordination with or proximity to others without being distracted by them; complete a normal workday and work week without interruption from psychologically-based symptoms; and respond appropriately to changes in the work setting. (Tr. 454-56). Treatment notes provide ample support for these aspects of Dr. Williams' and Dr. Marion's opinions. (*E.g.*, Tr. 271 (Espy reported irritability and

type of analysis the ALJ should have undertaken in the first place, but did not. Fundamentally, it is the responsibility of the ALJ, not the Court nor the Commissioner, to evaluate the relevant evidence in the first instance; the fact that the Commissioner now offers *post hoc* justifications for the ALJ's conclusion is simply insufficient." *Mendyk*, 2019 WL 4053949, at *7 (citing cases).

[6] The Court recognizes that an ALJ "can consider all evidence without directly addressing in his written decision every piece of evidence." *Kornecky*, 167 F. App'x at 508.

16

isolating himself, even from family members, on October 2, 2015); Tr. 269 (same on October 16, 2015); Tr. 307 (depressed, anxious, and withdrawing from family in November 2015); Tr. 311-14 (depressed, anxious, and hyperverbal on December 10, 2015); Tr. 328 (poorly groomed, with a guarded attitude, blunted affect, and anxious and dysphoric mood, along with distracted attention/concentration, poor recent memory, and tangential thought process on December 15, 2015); Tr. 291, 295 ("very jittery and anxious," could not keep still, and had difficulty maintaining focus in February and May 2016); Tr. 317 ("not in a good place mentally" in June 2016); Tr. 393 (anxious and sad, with low affect and difficulty focusing; "obsessing" over "how things are going to end for him" in July 2016); Tr. 395 ("very sad, depressed, anxious, and felt hopeless about himself" in September 2016); Tr. 399 ("anxious and upset and seemed to project no positive thoughts for his future" in November 2016); Tr. 402 ("venting" about "being pushed out of his job" in December 2016); Tr. 405 (continued to "struggle with flashbacks concerning his previous job" in February 2017); Tr. 408 ("still obsessing a lot about the injustice in his life and the unfairness of the system" in March 2017); Tr. 431 (Espy continued to feel anxious, confused, lost, and angry that his "life and career ended abruptly" and that he had been "the victim of a malicious system" in May 2017); Tr. 434 (pressured speech and thoughts, flashbacks and nightmares in July 2017; Dr. Marion noted that his "symptoms and PTSD are still very strong daily and intrusive for him"); Tr. 439 (anxious mood, pressured speech, and obsessive thought content in August 2017); Tr. 451 (pressured speech, perseverations related to past job, and making "little progress" in November 2017)).

While the ALJ need not address every piece of evidence in the record, *Kornecky*, 167 F. App'x at 508, he does not fairly discharge his duties when he fails to meaningfully discuss significant contradictory portions of the record. *See Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013); *Roberts v. Colvin*, No. 13-14675, 2015 WL 181658, at *10 (E.D. Mich. Jan. 14, 2015) (noting that while ALJ need not discuss all record evidence, "the quality and volume of evidence not discussed by the ALJ may 'raise[ ] serious doubts about the supportability of the ALJ's RFC finding' and overall conclusions.") (quoting *Wilcox v. Comm'r of Soc. Sec.*, No. 13-12549, 2014 WL 4109921, at *7 (E.D. Mich. Aug.19, 2014)). A substantiality of evidence evaluation does not permit a selective reading of the record. *See Trudell ex rel. Bushong v. Apfel*, 130 F. Supp. 2d 891, 895 (E.D. Mich. 2001) ("Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.") (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). In other words, where an ALJ's decision fails to meaningfully discuss or explain away significant contrary pieces of evidence, his conclusions are not supported by "substantial evidence." *See Walker v. Comm'r of Soc. Sec.*, No. 12-11175, 2013 WL 2393178, at *13 (E.D. Mich. May 31, 2013). Moreover, the Court notes that because many of the records not discussed by the ALJ relate to the 12-plus month period immediately following Espy's alleged onset date, it is possible that Espy could qualify for a closed period of disability. But, that is a matter for the ALJ to analyze in the first instance.

18

In light of the above analysis, the Court concludes that the ALJ failed to properly apply the treating physician rule.  Between them, Dr. Williams and Dr. Marion opined, in relevant part, that Espy has difficulty with sustained attention, concentration, and distractibility; that he cannot be around people or work in coordination with or proximity to others without being distracted by them; that he cannot complete a normal workday and work week without interruption from psychologically-based symptoms; and that he cannot respond appropriately to changes in the work setting.  (Tr. 299, 305, 454-56).  The ALJ referenced and discussed numerous treatment notes supporting these aspects of both opinions (Tr. 20), and failed to discuss many other records that similarly supported the opinions, yet gave the opinions "little weight," finding them "inconsistent with the general pattern of evidence contained in the hearing level record" without any further explanation or detail.  (Tr. 22).  This is simply insufficient.  *See Mendyk*, 2019 WL 4053949, at *7 ("The Sixth Circuit has made clear that courts cannot excuse a denial of a mandatory procedural protection, such as the treating physician rule, simply because as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion, and thus, a different outcome on remand is unlikely.") (internal quotations omitted).

For all of these reasons, the Court cannot conclude that the ALJ's decision to give little weight to the opinions of Espy's treating providers is supported by substantial evidence and, thus, recommends remand for further consideration of these opinions and the other evidence discussed herein.

## III.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #16**) be **DENIED**, Espy's Motion for Summary Judgment (**Doc. #13**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Report and Recommendation.

Dated: October 25, 2019                         s/David R. Grand
Ann Arbor, Michigan                              DAVID R. GRAND
                                                 United States Magistrate Judge

## <u>REVIEW</u>

Either party to this action may object to and seek review of this Report and Recommendation ("R&R"), but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed .R. Civ. P. 72(b)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   Filing objections that raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this R&R.   *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).   A copy of any objection must be served upon this Magistrate Judge.   E.D. Mich. L.R. 72.1(d)(2).

*Note these additional requirements at the direction of Judge Cleland:*

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this R&R to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 25, 2019.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager